UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| LUIS A. PADILLA<br>6951-B 210th Street<br>Oakland Gardens, NY 11364<br><br>　　　Plaintiff,<br><br>　　　v.<br><br>ERIC K. FANNING<br>Secretary of the Army<br><br>　　　Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  CA No. _____<br>)<br>)<br>)<br>)<br>) |

## COMPLAINT FOR DECLARATORY RELIEF

　　　This is a non-monetary claim to set aside and remand the decision of the Army Board for Correction of Military Records [ABCMR] #AR2015-0003011 (March 17, 2015), that denied plaintiff's reconsideration request of a prior 2011 ABCMR decision #AR2010-0021648 (March 8, 2011).  The 2011 ABCMR denied removal or transfer a June 28, 2009, Letter of Reprimand [LOR] from his personnel files.

　　　The claim is limited only to the 2015 reconsideration request denied as time-barred, when the BCMR applied a procedure refusing reconsideration requests not received within 1 year of the Board's original 2011 decision.   The ABCMR 2015 summary denial was *ultra vires* twofold:

　　　(1) When particular application of the 1-year limitation period to Master Sergeant Padilla's situation while full-time active duty, violated his right and protection under the Servicemembers Civil Relief Act 50 U.S.C. app. §526 [SCRA], that military service may not be included in computing any period limited by law, regulation, or order, for the bringing of any action or proceeding by such service-member in a board or other agency of the government.  The Correction Boards' charter 10 U.S.C. § 1552 grants discretion to remedy errors or injustice but does not entitle in doing so, to exceed such authority by violating express statutory directives.

　　　(2) Particular application of the 1-year limitation period to his situation constituted an injustice under 10 U.S.C. § 1552(a); that failure to recognize and remove such injustice violated the Board's mandate.  Haselwander v. McHugh, 774 F.3d 990 (2014)(when a Correction Board fails to

1

correct injustice in the record, "it is acting in violation of its mandate under 10 U.S.C. § 1552(a)," citing <u>Yee v. United States</u>, 512 F.2d 1383, 1387 (Ct.Cl.1975) ("the record compelled the board to correct his records to 'remove an injustice'").

Plaintiff is not challenging the 2011 ABCMR decision, nor asking the Court to address the merits to remove/transfer the LOR from Padilla's personnel files. He seeks a limited remand so that his February 9, 2015, reconsideration request is forwarded to the ABCMR for review on the merits.

## JURISDICTION AND VENUE

Jurisdiction is conferred on this Honorable Court on the *ultra vires* claim by 28 U.S.C. § 1331, with waiver of sovereign immunity under the Administrative Procedure Act, U.S.C. § 702.

Venue is proper as the Defendant is found in this District.

## PARTIES

Plaintiff, Luis A. Padilla, is an active duty soldier in the U.S. Army, assigned to the federal Active-Guard Reserve [AGR], at the rank/grade of Master Sergeant (E-8).[1]

Defendant, Eric Fanning, in his official capacity, is the Acting Secretary ss the Army.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

In the March 17, 2015, denial by the ABCMR to Padilla stated that "the ABCMR will not consider any further requests for reconsideration of this matter....you have the option to seek relief in a court of appropriate jurisdiction." It relied on A.Reg 15-185 (2006), at ¶ 2-15b, with the ABCMR letter stating –

> This provision....allows...reconsideration...if...received within one year of the ABCMR's original decision... [Y]our request for reconsideration was not received within one year of the ABCMR's original decision. As a result, your request for reconsideration does not meet the criteria...and we are returning your request without further action.

---

[1] 10 U.S.C. § 12310 (reservists called to active duty for the purpose of organizing, administering, recruiting, instructing, and training the Reserve Components).

FACTS

1. In 1986 Padilla enlisted in the Army National Guard. From 1987 to 1991 he enlisted in the Regular Army and served on active duty. From 1991 to 2001 he served part-time in the U.S. Army Reserve. In 2002 he returned to full-time active duty as a federal AGR soldier, and in 2005 reenlisted for an indefinite term. He is scheduled for mandatory retirement from active duty in January 2017.

2. In 2004, the federal government began a nation-wide investigation into an internet-based diploma business selling false and fraudulent academic products. This included high school and college degrees, and academic transcripts "purporting to be from legitimate academic institutions." [2] One of these was institutions was Saint Regis University. The DOJ investigation found that —

> The facilities offered assessment for life experience, pledged that the degrees with little to no course-work ... The website was sophisticated and included web-links to a variety of organizations which would attest to the legitimacy of the school and their degrees, and provide the false appearance of being a third-party. * * * The multitude of websites, logos, fictitious faculty and staff, *gave the appearance of separation...* With dozens of institutions all seeming to reference these 'credentialing' organizations, *an air of legitimacy was created which duped or enticed thousands of buyers to purchase the degrees.*

Operation Gold Seal [italics added]..

3. In 2007, SFC Padilla was selected for promotion to MSG (E-8). Based upon his sequence number on the list, the promotion effective date of rank (DOR) would be June 1, 2008.

4. In April 2008, the Army CID identified Padilla among a number of service members who obtained degrees from Saint Regis University in 2003. The CID concluded that in 2008

> Padilla knowingly submitted fraudulent degrees to his [personnel file] and subsequently validated his file for promotion * * * if his promotion packet contained a fraudulent document that his promotion could become invalid. [3]

5. The CID in 2008 found evidence suggesting Padilla believed the college degree was legitimate from an accredited institution– he submitted the college degree to apply for acceptance to a law school. CID Report (Form 94 page 1 of 2).[4]

---

[2] August 5, 2008 U.S. Department of Justice press release "Diploma Mill Promoter Sent to Prison." [Press Release];. U.S. Army Criminal Investigation Command (CID) report of investigation 0013-20080CID253-4153 (16 Dec 2008) detailing the federal "Operation Gold Seal" investigating this internet-based diploma mill [Operation Gold Seal].

[3] CID final report at 2 (investigative summary); and Special Agent report (12 Sep 2008).

[4] Padilla later withdrew from the application process after starting full-time active duty as an AGR soldier.

6. As a result of the pending CID investigation, a "FLAG" was imposed on May 7, 2008, for "adverse action" that stopped any favorable personnel actions for SFC Padilla. A FLAG is Department of Army Form 268, *Report to Suspend Favorable Personnel Actions.* The FLAG placed Padilla in a "non-promotable status" automatically delaying the impending E8 promotion. Army Reg. 600-8-19 § 1-10*a*(6), § 1-11.

7. In October 2008, an informal CID report was forwarded to SFC Padilla's senior Army commander, Brigadier General [BG] David Elmo. On October 27, BG Elmo's command attorney called the "Staff Judge Advocate" (SJA), was Colonel Prevost. He conducted a legal review of the CID investigation. Col Prevost opined that, based upon the evidence, both criminal and innocent intent were plausible– "may equally make him a victim of this university as opposed to committing fraud by having bought undeserved degrees." [5] The SJA recommended that BG Elmo advise SFC Padilla's immediate commander/supervisor Lieutenant Colonel [LTC] Washington take appropriate action; and that BG Elmo take "no UCMJ action...against SFC Padilla on the evidence thus far presented;" and that Padilla remove any improper material from his files. BG Elmo "concurred" with the SJA recommendations.

8. On November 4, 2008, the ongoing CID investigation was terminated by Padilla's immediate commander LTC Washington after he determined "there was sufficient information and/or evidence to make an adjudication decision."[6] LTC Washington decided to take no further action.

9. On December 8, 2008, the CID issued its Final Report. Because the investigation had been terminated on November 4, 2008, it contains no further evidence.

10. On January 15, 2009, SFC Padilla's supervisors issued a duty evaluation report. It contained the highest ratings in the section "Overall Performance and Potential." NCOER 2009 § V (rater checking the block: "among the best"; senior rater checking # 1 of 5 blocks/successful). The

---

[5] COL Prevost also earlier in the review stated: "There is little evidence provided in the record that addresses intent; specifically the intent to knowingly submit a false transcript." Id at 1, ¶ 3.

[6] CID report , Special Agent report (4 Nov 2008).

NCOER Reviewer, LTC Washington "concurred" with the report.

11.  On February 12, 2009, BG Elmo removed the FLAG on Padilla's personnel file, "for the following reason: Case closed favorably [code](C)."  This is considered a FLAG's Final Report (C) in § IV.  Favorably closed C is defined as "investigation finds no substantiated findings, soldier is exonerated, or no disciplinary action is taken."  Army Reg. 600-8-2 Table 2-2 (*Report Codes).*

12.  This Army Regulation lists other potential reasons that BG Elmo had the option to identify as a reason for the removing the Flag:  "Disciplinary action (D)" or "Soldier transferred or discharged (E)" or "Other final action (Z)."   Report code "D" is used to complete section IV for–

> Final Report:  unfavorable.  This report is prepared when—investigation finds substantiated charges; punishment is completed that includes, but not limited to....[administrative] memorandum of reprimand (local or  [personnel record] filed).

13.  Commanders may also recommend that a soldier's name be "removed from a promotion list at any time."  Army Reg. 600-8-19 ¶ 4-15b.  A soldier may be removed when there is 'cause to believe' that the soldier is "mentally physically, morally, or professionally unqualified to perform duties of the higher grade."  Examples, given are UCMJ action, administrative reprimands in their personnel file, "or other derogatory information not filed in the [OMPF] if it is substantiated, relevant, and might reasonably and materially affect a promotion recommendation."  Id ¶¶ 4-15, 4-17.

14.  When a flagging action is closed, commanders must forward to Army Headquarters a copy of the DA From 268 with date and type of punishment received, and date that an administrative memorandum of reprimand was approved for filing.  This information (including locally filed memorandum/letters) will be used to determine the soldier's eligibility to remain on or be removed from a promotion list.  Army Reg. 600-8-2 ¶ 1-10b.

15.  If the Flag is lifted with disposition "case closed favorably," the soldier will be promoted with an effective DOR on the date he/she would otherwise have been promoted.  Id § 1-11a.

16.  When BG Elmo in February 2009 favorably closed the Flag (C), with a final report sent to Army Headquarters, he had determined the CID investigation found no substantiated findings, Padilla was exonerated, and so no disciplinary action was taken.  Moreover, BG Elmo did not use the CID investigative report as "other derogatory information" not filed in the personnel file, to

recommend SFC Padilla be removed from the MSG promotion list.  It follows that BG Elmo determined that the CID report was <u>not</u> substantiated, relevant, or might reasonably and materially affect a promotion recommendation.  BG Elmo's decision to favorably lift the Flag, instead of recommending removal from the E-8 list, means that SFC Padilla was mentally, physically, morally, and professionally qualified to perform duties of that higher grade.

17.   With the Flag favorably removed on February 12, the Army on February 17 issued orders for SFC Padilla to be promoted to MSG (E-8) retroactively date-of-rank effective on June 1, 2008, as his original date of rank prior to the delay.  The order states -

> The Secretary of the Army has reposed special trust and confidence in the patriotism, valor, fidelity, and professional excellence of Padilla, Luis, Andres.  In view of these qualities and his demonstrated leadership potential and dedicated service to the U.S. Army he is therefore promoted from the E7 SFC to E8 MSG ...[7]

18. On May 26, 2009 – just a few days before Padilla's promotion to E8 – BG Elmo issued a him an administrative reprimand for knowingly purchasing fraudulent degrees, and submitting false information for inclusion in his personnel file to affect his E8 promotion selection.  Elmo implied Padilla was unfit to serve in the higher grade:

> you purchased fraudulent degrees .... And you later submitted this information, known to you to be false...to have it recorded in your personal record * * * * Your actions, of purchasing and using fraudulent degrees, that may have been considered for personnel actions to include promotion consideration, lead me to question whether you can be a role model for other soldiers.   Your behavior indicates that you cannot be trusted, have little regard for other soldiers, and are unconcerned with compliance with applicable laws and regulations. Your conduct is inexcusable and a disgrace United States Army.

19.   On June 1, 2009 Padilla replied to the proposed LOR.  He requested that the LOR not be filed, stating that he was

> naive, ignorant, and gullible...did not commit fraud, only contacted Saint Regis University out of curiosity ... was told all of his prior college transcripts, his military training, and life experiences would qualify him for two degrees ...had [them] entered in his OMPF because he truly believed they were valid, and he lacked the sophistication to recognize the scam.

---

[7] Orders AHRC-PRO # B-02-901301 (17 Feb 2009).

20. 26 June 2009 BG Elmo filed the LOR in Padilla's official military personnel file [OMPF].

21. On December 4, 2009, the Padilla requested that the Army Suitability Evaluation Board remove the LOR or transfer it to the restricted portion of his OMPF. On March 11, 2010, the DASEB denied his request.

22. 10 August 2010 Padilla requested to the next appellate forum, Army BCMR, to remove the LOR or transfer to the restricted portion of his files. 8 March 2011 ABCMR denied his request.

Circumstances contributing to delay in ABCMR reconsideration.

23. In 2011 Padilla's mother became seriously ill. Padilla became her legal guardian, with the Army determining she qualified as his "military dependent." Padilla enrolled his mother in the Army's Exceptional Family Member Program. This permitted assignment stabilization and near necessary medical facilities. Padilla arranged for transfer into a nursing home. However, many expenses were not covered. Padilla incurred many costs causing severe financial and emotional stress. His mother died in early 2013.

24. In 2013 the Army reassigned Padilla to New York City. He was the District Leader/Master Trainer to the *Army Reserve Career Counselors Division* (ARCD), 1st Battalion. He traveled often as his territory covered 7 states of New England, and Germany.

25. The ARCD as a whole, contains 13 battalions with over 1400 Army Reserve Career Counselors. They are located throughout the United States. They provide comprehensive career management including reenlistments, and manage accession programs. There are 26 Active Guard Reserve (AGR) Career Management (CM) Officers. 1st Battalion is headquartered in Fort Totten, New York.[8]

26. **New Evidence**. MSG Padilla retained counsel to prepare for ABCMR reconsideration. He underwent a polygraph exam. The test was the same used by the CIA, FBI and DIA (Defense Intelligence Agency). He was asked a series of questions to test veracity against accusations in the

---

[8] http://www.usar.army.mil/Commands/USArmyReserve/ARCD/AboutUs.aspx

LOR and CID investigation.  Results determined "no deception," with passing scores "far surpassing what is needed." Polygraph Examination (2014) at 2.

27. *New Evidence*.  MSG Padilla added to his reconsideration in 2015, all subsequent duty performance evaluations, and superiors' letters of support attesting to his good military character.  The performance evaluations showed a reputation for absolute, unquestionable integrity, with the highest marks for performance/potential.   For example, NCOER, November 2010 ("The epitome of Army values and dedication to duty .... Absolute and unquestionable professional integrity.").  Cf. United States v. Vandelinder, 20 M.J. 41 (C.M.A.1985) (evidence of accused's good military character may raise reasonable doubt to charged offenses); United States v. Belz, 21 M.J. 765 (A.F.C.M.R.1985) (reversed drug-related conviction when judge excluded accused's file of performance reports, and affidavits by military superiors attesting to good military character).

28. *New Evidence*.  The reconsideration case found that after 2010, many online colleges offer legitimate college credit and degrees "for knowledge gained during adult lifetime and work....Padilla today would qualify for a genuine degree." 2015 BCMR  (legal brief), at 4,5.  Typical of today, in 2016 during MSG Padilla's duty travel in New Hampshire, a large highway billboard was advertising college credit for "life experience" —



Elm Street, Manchester, NH.  Franklin University, www.franklinpierce.edu

28A.  Unlike in the past, online colleges had ubiquitous warnings "to watch for fraudulent diploma mills." Id at 11.  The U.S. military has now "endorsed" online colleges by servicemembers because they offer college credit for "military experience" alone, without further course work.  Id 4-5.

2015 Reconsideration Request to ABCMR

29.  On February 9, 2015, Padilla requested that the ABCMR reconsider its March 8, 2011, decision, submitting this new evidence.  On March 17, 2015, the ABCMR summarily denied Padilla's reconsideration request without reaching the merits.  The automaton ABCMR mechanically invoked the 1-year limitation period.  It relied on Army. Reg 15-185 (2006), at ¶ 2-15b, with the ABCMR letter to Padilla stating –

> This provision....allows...reconsideration...if...received within one year of the ABCMR's original decision... [Y]our request for reconsideration was not received within one year of the ABCMR's original decision. As a result, your request for reconsideration does not meet the criteria...and we are returning your request without further action.

**Service-members Civil Relief Act,** (SCRA) 50 U.S.C. §§ 501-597b

30.  The SCRA, which is designed to strengthen national security by allowing servicemembers "to devote their entire energy to the defense needs of the Nation," provides a wide range of protections for the civil rights of servicemembers on active duty. In interpreting the preceding Act, the U.S. Supreme Court held that the "Act is always to be liberally construed to protect those who have been obliged to drop their own affairs to take up the burdens of the nation." Ausmer v. Shinseki, 26 Vet.App. 392, 395 (2013)(*quoting* Boone v. Lightner, 319 U.S. 561, 575 (1943); *and* LeMaistre v. Leffers, 333 U.S. 1, 6 (1948) ("[T]he Act must be read with an eye friendly to those who dropped their affairs to answer their country's call.")).

31.  The SCRA is wide reaching, applying in all United States jurisdictions and States. 50 U.S.C. app. § 512(a).  It applies to "any judicial or *administrative proceeding*, commenced in any court *or agency*, in any jurisdiction..." Id  § 512(b)[italics added]. The plain language of the statute generally evidences Congress's intent for broad application of the SCRA. Ausmer at 395.

32.  The SCRA defines "military service" as "active duty" in 10 U.S.C. § 101(d)(1); 50 U.S.C. app. § 511(2). Section 101(d) defines "active duty" as "full-time duty in the active military service of the United States." SCRA section 511(3) defines "period of military service," as "the period beginning on the date on which a servicemember enters military service and ending on the date on which the servicemember is released from military service or dies while in military service."

9

**Tolling Provision:**

33. The tolling provision of the SCRA, entitled "Statute of limitations," states, in pertinent part that—

> The period of a servicemember's military service may not be included in computing any period limited by law, *regulation*, or order *for the bringing of any action or proceeding* in a court, or *in any board*, bureau, commission, department, *or other agency* [of a State...] *or the United States by* or against *the servicemember.....*

50 U.S.C. app. § 526(a)[italics added]. Moreover, Section 511 of the SCRA defines the term "court" as meaning "a court or an administrative agency of the United States or of any State...whether or not a court or administrative agency of record."

34. The heading of Section 526 suggests it may be limited to 'statutes' of limitations. The court in Ausmer found that a 120-day period for filing an Notice of Disagreement at the Court, was not a statute of limitations, but a "procedural rule." Moreover, the court found that Congress did not intend to limit the tolling provision to "statutes of limitations" but applied to procedural rules that limit the time for filing an action—

> Notwithstanding the section's heading, there is nothing in the plain language of the statute that suggests Congress intended to limit its applicability to statutes of limitations. See Pa. Dep't of Corr. v. Yeskey, 524 U.S. 206, 212 (1998) ("'[T]he title of a statute . . . cannot limit the plain meaning of the text. For interpretive purposes, [it is] of use only when [it] shed[s] light on some ambiguous word or phrase." [citations omitted]...("Determining a statute's plain meaning requires examining the specific language at issue and the overall structure of the statute." (citing Bethesda Hosp. Ass'n v. Bowen, 485 U.S. 399, 403-05 (1988), aff'd sub nom Gardner v. Brown, 5 F.3d 1456 (Fed. Cir. 1993), aff'd, 513 U.S. 115 (1994).
> * * *
>
> First, the plain language of the statute refers to "any period limited by law, regulation, or order," for the "bringing of any action or proceeding." 50 U.S.C. app. § 526(a) (emphasis added). Second, the stated purpose of the SCRA is to provide for the "temporary suspension of judicial and administrative proceedings . . . that may adversely affect the civil rights of servicemembers during their military service," 50 U.S.C. app. § 502(2).

Ausmer 395-96. [9]

---

[9] *Cf* Detweiler v. Pena, 38 F.3d 591, 593-94 (D.C.Cir.1994)(in tolling BCMR 3-year statute of limitations on original applications, "the command of § [526] is unexceptional...it tolls any limitation period appearing in any law, for bringing "any" action before any court, board or bureau... the Supreme Court labeled this dictate " unambiguous, unequivocal, and unlimited." [citation omitted]. See Bretherick v. Crittenden County, 2007 U.S. Dist. LEXIS 20213 (E.D. Ark. March 21, 2007) (in untimely administrative claim for unpaid overtime delayed by active duty, "SCRA tolling provision is crystal

35. Under Army.Reg 15-185, the procedural rule ¶ 2-15b is a regulatory time limitation period for the bringing of a reconsideration action or proceeding before the Board for Corrections, within the Army Review Boards Agency. The time limitation period in Padilla's case was used against him, as a servicemember qualifying under the SCRA, by including time in military service.

36. The BCMR decision was 8 March 2011. Under the 1-year time period, MSG Padilla had until 8 March 2012 to reconsider. His request in February 2015 was less than 3 years later. But during that time MSG Padilla remained on full-time active duty. That time "may not be included in computing" the Board's reconsideration limitation period. The BCMR denial of his 2015 request as time-barred after March 8, 2012, violated his right and protection under the SCRA. The BCMRs' charter 10 U.S.C. § 1552 grants discretion to issue implementing regulations. But a Board cannot apply such regulations in cases that exceed its authority by violating the SCRA statutory directive.[10]

37. By ignoring the command of the SCRA to exclude, in this particular case, MSG Padilla's time on active duty (March 2012 to February 2015), the BCMR's denial violated a statutory mandate. The BCMR summary denial was *ultra vires* agency action.[11]

Injustice

38. Circumstances contributing to delay in the reconsideration are set forth above, ¶¶ 23-25. His active duty during that time that required substantial travel, including overseas, had "materially influenced" his ability to comply with the 1 year reconsideration rule. In accordance with the ABCMR's mandate to remove injustice, the 1 year limit on the 2011 BCMR decision should have been stayed by the Board.[12]

---

clear in that the period of a servicemember's military service may not be included in computing any period limited by law).

[10] Although 10 U.S.C. § 1552(a) grants discretion to act or not act on alleged errors or injustice "when necessary," it does not entitle a Board to violate express statutory directives in doing so. Unterberg v. United States, 412 F.2d 1341, 1346, 188 Ct.Cl. 994 (1969); Ashe v. McNamara, 355 F.2d 277, 281 (1st Cir. 1965).

[11] A court addressed whether another exception applied to a ABCMR denial under the 1-year reconsideration period. Adamski v. McHugh 2015 WL 4624007, n. 3 (D.D.C. 2015)(in *ultra vires* claim involving BCMR 1-year reconsideration limit, court ordered additional proceedings if new DoD regulation applied to waive time limits in certain PTSD claims).

[12] *Accord,* SCRA §§ 522, 524 (equitable consideration that court may stay judgment or order when person materially influenced by reason of military service from complying). The term "court" defined as including "an administrative agency of the United States...whether or not...administrative agency of record.

39. The refusal of the 2015 ABCMR to forward Padilla's request was *ultra vires* by violating its mandate under §1552(a), when the particular application of the 1-year time limit to his situation, was an injustice. Haselwander v. McHugh, 774 F.3d 990 (2014)(when a Correction Board fails to correct injustice in the record, "it is acting in violation of its mandate under 10 U.S.C. § 1552 (a), "citing Yee v. United States, 512 F.2d 1383, 1387 (Ct.Cl.1975) ("the record compelled the board to correct his records to 'remove an injustice'").

40. The long-standing interpretation of section 1552 from the original 1946 enabling act is that the phrase "remove an injustice" was deliberately not defined.  "There is no indication that Congress intended any limited or technical meaning for them" so as to preclude the basis of remedial actions.  Major L. Williams, *The Army Board for Correction of Military Records,* 6 Mil.L.Rev. 41, 48 (1959)(quoting 41 Op.Att'y.Gen. No 19 (1952)).

41. The provisions of the BCMR enabling statute, 10 U.S.C. ¶ 1552, including whether to correct error or remove injustice, make no distinction between original applications and requests for reconsideration. Lipsman v. Sec'y of Army, 335 F.Supp.2d 48 (D.D.C.2004)(provisions of ¶ 1552 apply to both types of applications).

42. The LOR imposed by a General Officer, in and of itself, equates to MSG Padilla culminating his long Army career under the stigma and ignominy accused of crime, misconduct, and disgraceful behavior:   committed fraud, not a role model for soldiers, cannot be trusted, has little regard for other soldiers, is unconcerned with following laws and regulations – and accordingly – is a disgrace to the United States Army.

CAUSE OF ACTION

The 2015 ABCMR denial of plaintiff's request as time-barred – and refusing to forward his reconsideration to the Board to remove or transfer a June 28, 2009, Letter of Reprimand [LOR] – was *ultra vires* agency action by violating the mandate under 50 U.S.C. app. § 526 by failing to exclude his military service in the Board's 1-year limitation period.  And otherwise, application of the ABCMR 1-year limitation period to his particular situation, including during military service,

constituted an injustice under 10 U.S.C. § 1552(a), and that failure to recognize and remove such injustice violated the Board's mandate.

## PRAYER FOR RELIEF

That this Honorable Court declare that the Army BCMR's 2015 refusal to forward plaintiff's request for reconsideration as time-barred, was *ultra vires* agency action by violating the mandates under 50 U.S.C. app. § 526, and 10 U.S.C. §1552.

That the Court remand to the case to the ABCMR for appropriate relief;

That based upon this remand judgment, this Honorable Court grant attorney fees.


23 May 2016                                             Respectfully Submitted,



a/s John A. Wickham,  DC Bar 454863
Evergreen, CO 80439.
303 670-3825 fax: 303 670-1586
wickham1@wispertel.net  (ECF account email)

Counsel for Plaintiff Luis Padilla